IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


ROBERT SHUFORD,            )
                          )
    Plaintiff,           )
                          )     CIVIL ACTION NO.
    v.                )     2:07cv1016-MHT
                          )         (WO)
CITY OF MONTGOMERY,    )
                          )
    Defendant.          )


OPINION

Plaintiff Robert Shuford brings this lawsuit against defendant City of Montgomery asserting discrimination based on race and retaliation, both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e-17.[1]  This court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3).

This case is currently before the court on the city's motion for summary judgment on both Shuford's race-

---

1. The complaint also raised a Title VII claim of discrimination based on religion.  However, Shuford clarified, at pre-trial, that he had dropped this claim.

discrimination and retaliation claims.  For the reasons that follow, the motion will be granted.


## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. FACTUAL BACKGROUND

Shuford is a 57-year-old black male.  He is the president of his local union (the United Steel Workers)

and a supervisor and mechanic in the Auto Light Division of the City of Montgomery's Fleet Management Division. Between 2004 and 2006, Shuford helped several of his co-workers (Mark Jordan, Carl Lewis, and Larry Fitzpatrick) file charges with the Equal Employment Opportunity Commission (EEOC) against the city; he also testified in their hearings and federal lawsuits.

On March 9, 2006, approximately one month after he testified for Fitzpatrick, Shuford attended his own personnel hearing, where the city charged a number of incidents of misconduct, including: (1) that Shuford entered an email account belonging to his supervisor, Royce Albright, and stole a personal that Albright was preparing; (2) that he retrieved a copy of an old work order, without obtaining the required approval from his supervisor, and provided it to Fitzpatrick for use in Fitzpatrick's personnel hearing; (3) that he displayed his inadequacy as a supervisor when he was unable to explain the contents of a basic work order at

Fitzpatrick's hearing; (4) that he "lied" in the written witness statement he provided for Fitzpatrick, because his written statement did not correspond with his oral testimony; (5) that he improperly trained and supervised Fitzpatrick and knowingly permitted Fitzpatrick to discard new, unused seals for fuel pumps; (6) that he was found sitting in the break room, reading his Bible, when he was supposed to be on the shop floor supervising mechanics; (7) that he regularly failed to stay abreast of the status of vehicles in the shop; and (8) that he failed to take personal initiative in responding to a problem with the mayor's car and generally displayed a "lazy attitude" toward his job.  Def.'s M. Summ. J. Ex. A.

Before the March 9 hearing, Shuford submitted a very brief written response to the charges listed above; at the actual hearing, however, he chose to remain silent, refusing to answer the questions asked by Terry Gaddis, the Director of Fleet Management.

On June 5, 2006, Shuford received a letter suspending him without pay for 25 days: ten days for the charges that led to the personnel hearing; and 15 days for refusing to answer Gaddis's questions, which the city viewed as insubordination.  On July 13, 2006, Shuford filed an EEOC charge asserting that he suffered discrimination based on race and religion and that he had been retaliated against by the city for his protected activities.

Approximately six months later, on January 30, 2007, Shuford received a letter of reprimand from his supervisor, Albright, for allegedly permitting one of the workers he supervised, Michael Means, to leave before the end of his shift without arranging a replacement for him and without briefing Albright on the situation.  In response to this letter of reprimand, Shuford filed another EEOC charge complaining that this letter of reprimand was retaliatory.  He subsequently filed this lawsuit in federal court.

## III. DISCUSSION

### A. Race Discrimination

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2 (a)(1).  To support such a claim, the plaintiff must prove that the employer acted with discriminatory purpose, motive, or intent.  Williams v. Motorola, Inc., 303 F.3d 1284, 1293 (11th Cir. 2002).  The plaintiff may prove discriminatory intent by producing direct or circumstantial evidence. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Shuford relies on circumstantial evidence.

A circumstantial-evidence claim proceeds according to the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.  Standard, 161 F.3d at 1331.  Under this

6

framework, the plaintiff must establish a prima-facie case of discrimination, creating a "presumption of discrimination," which shifts the burden of production to the defendant, which must then produce a legitimate, nondiscriminatory reason for its actions.  <u>Id.</u>  If the defendant produces such a reason, the plaintiff must then produce "sufficient evidence to find that the employer's asserted justification is false."  <u>Reeves v. Sanderson Plumbing Prods., Inc.,</u> 530 U.S. 133, 148 (2000).

Although the prima-facie case shifts the burden of <u>production</u> to the defendant, it does not reallocate the burden of <u>persuasion</u>.  At all times the burden of persuasion remains with the plaintiff to prove by a preponderance of the evidence that the defendant acted with discriminatory intent.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993); <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>Standard</u>, 161 F.3d at 1331.

At the summary-judgment stage, no independent evidence of discrimination must be shown; there must simply be sufficient evidence of pretext such that the jury could reasonably infer the ultimate fact of intentional discrimination from the evidence presented. <u>Reeves</u>, 530 U.S. at 146-49.  To avoid summary judgment, the "evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation."  <u>Howard v. BP Oil Co., Inc.</u>, 32 F.3d 520, 525 (11th Cir. 1994).

Shuford has failed to carry this burden on his race-discrimination claim.  He argues that he was punished more severely than a similarly situated white employee when he was suspended 15 days for insubordination while the white employee was suspended for only ten days.  The city has offered a legitimate, non-discriminatory reason that these two employees were treated differently: Shuford's 15-day suspension for insubordination came immediately on the heels of his ten-day suspension for other misconduct and

the city applied its "progressive disciplinary policy,
which generally requires that discipline be progressively
increased with successive infractions."  Def.'s M. Summ.
J. 6.

The evidence submitted by the city shows that it did
consider Shuford's pending demotion and ten-day suspension
in applying an increased suspension for his insubordinate
conduct.   The evidence also shows that the white
employee's suspension for insubordination was his first;
he had no prior disciplinary hearings in his record, so
the progressive disciplinary policy was not applicable.
Thus, the city has produced a legitimate, non-
discriminatory rationale explaining why the white employee
and Shuford were treated differently.   Shuford has
produced no evidence suggesting that the city's proffered
rationale is actually a pretext for race discrimination.
Therefore, summary judgment will be granted on this claim.

## B. Retaliation

Title VII prohibits retaliation by providing that it is unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.  In order to make out a prima-facie case of retaliation under this statute, Shuford must present evidence showing: (1) he engaged in protected activity; (2) he suffered an adverse-employment action; and (3) the two are "causally related."  Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004).  The requirement that the adverse-employment action be "causally related" to the protected activity has been interpreted permissively, to require proof that the protected activity and the adverse-employment action were "not completely unrelated."  Meeks

v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir.
1994).

A circumstantial-evidence retaliation claim proceeds
under the same burden-shifting analysis utilized in the
race-discrimination context: once a plaintiff makes a
prima facie showing of retaliation, the burden shifts to
the defendant to rebut the presumption of retaliation by
producing legitimate reasons for the adverse-employment
action. Sullivan v. National R.R. Passenger Corp., 170
F.3d 1056, 1059 (11th Cir. 1999).  A plaintiff may
demonstrate pretext by showing that it is more likely that
retaliation, not the proffered rationale, motivated the
defendant; or the plaintiff may show pretext indirectly,
by showing that the defendant's proffered explanation is
unworthy of credence. Hairston v. Gainesville Sun Pub.
Co., 9 F.3d 913, 920 (11th Cir. 1993).

The city does not dispute the first two prongs of
Shuford's prima-facie case.  The city concedes that
Shuford engaged in protected activity, either when he

11

helped his coworkers file their EEOC charges and federal

lawsuits or when he filed his own EEOC charges; the city

also, implicitly, accepts that Shuford suffered an

adverse-employment action when he received a letter of

reprimand on January 30, 2007.[2]   Therefore, its motion for

_____

        2.  No  argument  or  evidence  has  been  presented
regarding the adverse-action prong; therefore, the court
does not consider it.  It is worth noting, however, that
a letter of reprimand could be "an adverse-employment
action" under the law of the Eleventh Circuit Court of
Appeals.  The Eleventh Circuit adopted a broad definition
of adverse-employment action in Crawford v. Carroll, 529
F.3d  961,  971-972  (11th  Cir.  2008)  (finding  adverse-
employment  action  where  employee  was  given  negative
performance review, which prevented her from receiving a
salary  increase),  and  Gillis  v.  Georgia  Dept.  of
Corrections,  400  F.3d  883  (11th  Cir.  2005)  (where
performance review was "meets expectations" instead of
"exceeds expectations," leading employee to receive only
a three-percent raise instead of a five-percent raise.)
In both Carroll and Gillis, the plaintiff was able to
identify a negative, tangible result which flowed from
the  action:  non-increase  or  lesser  increase  in  pay.
However,  Carroll  clarifies  that,  at  least  in  the
retaliation  context,  it  is  not  necessary  to  do  so.
Pursuant to Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53 (2006) the inquiry in a retaliation case is
whether the alleged negative employment action "might
have  dissuaded  a  reasonable  worker  from  making  or
supporting a charge of discrimination." Carroll 529 F.3d
at 974 (quoting Burlington, 548 U.S. at 66-67). It is
unclear, in this case, exactly how seriously the city
                                              (continued...)

summary judgment focuses on the "causally related" prong

of the prima-facie case, arguing that Shuford has not

shown that the letter of reprimand was causally related to

his protected activities.

    Shuford presents no evidence establishing causation.[3]

_____

(...continued)
views letters of reprimand, but it is clear they are
given to employees to discourage certain forms of
behavior.

    3.   Shuford did make an allegation in his complaint
that, after giving him the letter of reprimand, Albright
made suspicious comments about Shuford's affiliation with
the United Steel Workers.  Specifically, he alleges that
Albright told Shuford that the city "no longer had to
deal with" the United Steel Workers after an incident
involving a co-worker, Mark Jordan.  If supported, this
allegation might have suggested causation; however, there
is no evidence that such comment was ever made.  Although
the response to the motion for summary judgment cites to
Shuford's affidavit to support this allegation, the
affidavit mentions no such conversation with Albright let
alone any comments about the United Steel Workers
suggestive of retaliation.  As such, the court may not
consider this allegation.  "[A] nonmoving party cannot
rest on 'mere allegations' to counter a properly
supported motion [for summary judgment], but must set
forth 'specific facts' through affidavits or other
evidence, Fed. Rule Civ. Proc. 56(e)."   Wyoming v.
Oklahoma, 502 U.S. 437, 464 (1992); see also Lujan v.
National Wildlife Federation, 497 U,S, 871, 883 (1990);
Gladstone Realtors v. Village of Bellwood, 441 U.S. 91,
                                          (continued...)

The letter of retaliation was sent more than six months after Shuford filed his EEOC charge against the city, and there is no additional link offered between the protected activity and the letter of reprimand.   This is insufficient to establish a prima-facie case.   See e.g. Higdon v. Jackson, 393 F.3d 1211 (11th Cir. 2004) (determining that a three month period "by itself" cannot establish "a reasonable inference of a causal relation between the protected expression and the adverse action.") Shuford attempts to move directly into a rebuttal of the city's proffered rationale for the letter of reprimand.[4]

---

(...continued)
115 (1979).

   4. The lack of evidence concerning causation might be explained by Shuford's misunderstanding of the law.  In his response to the motion for summary judgment, he states, "to establish a case for retaliation, the employee must show that (1) he engaged in protected activity; (2) the employer was aware of that activity; and (3) the employee suffered adverse-employment action." Pl.'s Resp. M. Summ. J. 15.  To support this proposition, Shuford cites to Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). This is a plain misunderstanding of Little and the law in the Eleventh Circuit, which clearly establishes that "the
(continued...)

1mm

However, these arguments put the cart before the horse;

Shuford has not presented the requisite evidence of

causation in order to shift the burden to the city in the

first place.[5]   As such, he has failed to establish a

---

(...continued)
plaintiff must show ... the adverse action was <u>causally</u>
<u>related</u> to the plaintiff's protected activities." <u>Little</u>,
103 F.3d at 959 (emphasis added).

        5.    Because Shuford has not presented evidence
showing causation, the court need not analyze his
arguments that the city's proffered rationale is mere
pretext.   However, the court notes that, if it were to
address these arguments, they would also fail; Shuford's
has not shown that the city's proffered rationale was
mere pretext or "unworthy of credence." <u>Hairston v.</u>
<u>Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 920 (11th Cir.
1993).   Shuford's affidavit asserts that he told Means to
get Albright's approval before leaving; that Albright
called Shuford asking him to find a replacement for
Means; that Shuford told Albright that no replacement was
available; and that Means left early, nevertheless,
telling Shuford he had obtained permission from Albright.
In the end, however, even taking all of Shuford's
allegations as true, they do not show that Albright's
rationale was mere pretext or unworthy of credence.
<u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 920
(11th Cir. 1993).   Shuford's affidavit actually supports
the evidentiary basis for Albright's rationale,
demonstrating that Albright did ask Shuford to find a
replacement for Means; that Shuford did not find such a
replacement; and that Means still left early.   Although
Shuford has offered explanations or excuses as to why
                                        (continued...)

15

prima-facie case and summary judgment will be granted on his retaliation claim.

## IV. CONCLUSION

Shuford has failed to show that a genuine issue of material fact warranting a trial exits on either his race-discrimination or retaliation claims.  Although he established a prima-facie case in his race-discrimination claim (that a similarly situated white employee was treated more favorably), he offered no evidence of pretext to rebut the legitimate rationale offered by the city (that the two employees were treated differently because of the city's progressive disciplinary policy).  Regarding his retaliation claim, Shuford has failed even to present the necessary evidence of causation in order to establish a prima-facie case that the letter of reprimand was sent in retaliation for his engagement in protected activity.

---

(...continued)
this may have happened, he has not shown that Albright's rationale was pretextual.

16

As to both claims, therefore, the motion for summary judgment will be granted.

An appropriate judgment will be entered.

DONE, this the 26th day of January, 2009.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE